DRAKE and another, acting executors of the will of John Pell, deceased *v.* PELL and others.

---

J. P., by will, devised the residue of his estate to executors, in trust to pay rents to wife until his youngest child came of age. In case the youngest child came of age during the wife's life, the executors were to sell and, after reserving an annuity for the wife, to divide the residue equally among his nine children, or else to make a similar division by partition. In case the youngest child came of age after the wife's death, then a sale and division equally among the nine, or else a partition and similar division. " And in case any of my children shall die after me, and after having attained the age of twenty-one years, then the share, portion or interest of the child so dying shall go to the heirs, devisees or legal representatives of the child so dying." There was a declaration that the provision to the widow was in lieu of dower. All the nine children survived the testator, and attained their majority ; but four died afterwards and before the youngest had come of age. These were, 1. H., who left infant children and a husband, who administered and became their general guardian ; 2. B., who died intestate, leaving a widow and two infant children ; and one C. administered upon

1839.

DRAKE
*v.*
PELL.

his estate; 3. J. P., jr., who left a widow and will, and gave all to her; and 4, G., who died intestate, without issue and unmarried; and his brother R. administered. The mother, wife of the testator, was alive. The executors had sold the estate:

*Held*, that the nine children did not take vested interests until the youngest was of age.

*Also held*, that the words, " *heirs, devisees, or legal representatives of the child so dying*," were as words of purchase, and not of limitation; and that the persons who took under them would be such as answer to the description of heirs, &c·, of a deceased person, and not derivative ones. Also, that any deceased child here had a sufficient power of appointment to say to whom his share should go.

*Also held*, that the avails of the estate were to be considered as personalty.

*Likewise held*, that the children of H. took her share, and that their father had no interest; that the children of B. took her share, and that their mother had no dower; that the executrix of J. P., jr., took no part of his share; and that G.'s share went to his next of kin and not through his administrator.

---

*January*,
1839.

*Will.*
*Devise.*

THE bill was filed for the purpose of obtaining the advice and direction of the court as to a correct construction of the will of John Pell, deceased.

The will and the facts, so far as it is requisite for the understanding the questions presented to the court, were as follows: John Pell died in the year one thousand eight hundred and nineteen. By his will, he gave his personal estate, after payment of his debts, to his wife Mary Pell absolutely. He devised to her a house for her life. This bequest and devise was in lieu of dower. He devised the residue of his real estate in fee to his executors, in trust to pay to his wife the rents and profits, till his youngest child should be of age, except so far as they were otherwise directed. And further, in trust, so soon as his son, Benjamin Joseph Pell, should arrive at the age of twenty-one years, to sell to him a stall in the Fly market for one thousand dollars; and as each one should arrive at age, to pay to him and her, out of the rents and profits, one thousand dollars. The will then proceeded thus; " and I further direct that, in the partition of the said trust estate hereafter directed, no interest shall be charged to either of my children for the said sums of one thousand dollars to be paid to them respectively as aforesaid; and if either of my children shall die before becoming entitled to the said one thousand dollars, then that sum, but without interest, shall go, together

1839.

DRAKE
v.
PELL.

with the residue of the part or portion of such child, to the persons hereinafter mentioned as entitled to receive the same. In case the youngest of my surviving children shall arrive at the age of twenty-one years *in the lifetime* of my said wife, then I direct my said executors, as soon thereafter as might be, to sell the said real estate in such parcels, in such manner and on such terms as they may think most beneficial; and after reserving sufficient to secure the annuity hereinafter to my wife, to divide the residue of the proceeds of such sales equally among my nine children, John Pell, junior, Anna Maria Pell, Eliza Ann Pell, Benjamin Joseph Pell, Amelia Grace Pell, William James Pell, Caroline Pell, George Warner Pell and Richard Moore Pell, or else, at the discretion of my said executors, after reserving sufficient to secure the said annuity to my wife, to divide and make partition of the residue of the said real estate between my said children equally share and share alike, or to make partition of part of my real estate and sell the residue, and to divide the proceeds thereof as aforesaid."

"And I authorize them to make such partition in parcels, and, in any succeeding partition or distribution, to make compensation for any inequality there may have been in the former. And in case my youngest surviving child shall arrive at the age of twenty-one years *after* the death of my said wife, then, as soon after such youngest surviving child shall have attained the said age as can conveniently be done, I direct my said executors to sell the said real estate, as aforesaid, and to divide the proceeds thereof equally between my said children, or else, at the discretion of my executors, to divide and make partition of the said real estate between my children, equally share and share alike, or to make partition, as aforesaid, of part of my estate, and to sell the remainder and divide the proceeds thereof, as aforesaid, and such partition may be made in parcels, and any inequality in one partition may be corrected in a subsequent one. And further, after the death of my said wife, and before the youngest of my surviving children shall have attained the age of twenty-one years, to divide the rents, issues and profits of the said real estate among my said children, their executors or administrators share and share alike. *Item*, in case the youngest of my surviving children shall come

of age during the lifetime of my said wife, then I direct my said executors to pay to my said wife an annuity or yearly sum of seven hundred dollars a year, to be paid in half yearly payments of three hundred and fifty dollars each, during her natural life, and to reserve a sufficient fund therefor out of the said real estate or the proceeds of the sale thereof, and if the same be reserved in money, to vest it in bonds and mortgages on good real security. And I hereby authorize and direct my said executors to make all necessary repairs, and to pay all taxes and assessments and other charges on the said real estate out of the rents and profits thereof. And I also authorize them, during the life time of my youngest surviving child and during the lifetime of my said wife, Mary Pell, with her consent, and after her death without it, to make such improvements and erect such buildings on the said real estate as to them shall appear expedient and to pay for the same out of the rents and profits of the said real estate, and also to borrow money for that purpose, and to pay the same and the interest thereof out of the said rents and profits. And I further authorize my said executors to make partition of any real estate whereof, at the time of my death, I may be a tenant in common or joint-tenant, and to pay or receive money for equality of partition. And I further authorize and empower such of the said executors as shall prove this will and take on themselves the execution thereof, and the majority of them, and the survivors of them, and the majority of such survivors, and the last survivor of them, and the executors of such survivor, to do and perform all and every act and acts which the said executors are hereinbefore authorized to do and perform. I direct that if any one of my children shall die before me, leaving no child him or her surviving, then the share or portion of the child so dying shall belong to and be divided among my surviving children and the issue of such as may be dead, in like manner with the residue of my real estate. And in case any of my children shall die after me, under lawful age, and leave no child or children him or her surviving, then the share, portion or interest of such child so dying shall be divided among my surviving children and the issue of such as may be dead leaving issue, share and share alike, such issue standing in the place of his, her, or their parent and taking such share as such

parent would be entitled to if living. And in case any of my said children shall die after me, under the the age of twenty-one years and leaving a child or children him or her surviving, then the share, portion or interest of the child so dying shall go to his or her child or children, if more than one, as tenants in common ; and in case any of my children shall die after me and after having attained the age of twenty-one years, then the share, portion or interest of the child so dying, shall go to the heirs, devisees or legal representatives of the child so dying. *Item.* I hereby declare that the before mentioned bequest and devise to my wife, and the other provisions in her favor herein contained, are intended and shall be in lieu and bar of all dower and right of dower in estate."

The defendants were the widow of the testator, who had qualified as an executrix ; his surviving children; and the legal representatives of such as were deceased. The widow was made a party defendant, because she had certain claims, both in her own right and as the executrix of her deceased son, John, which might conflict with the rights of some of the other claimants.

It will be seen by the will, that the testator devised the bulk of his real estate, which alone was involved in the suit, to his executors, in trust to pay over the rents and profits to his widow until his youngest surviving child should become of age, for the support of herself and children ; and when the youngest surviving child should become of age, to sell and convey the real estate, and divide the proceeds, (after reserving thereout a sufficient fund to yield an annuity of seven hundred dollars for his widow during the residue of her life) equally among the testator's nine children, or else, at the discretion of the executors, to make partition of the said real estate among these children.

All the nine children had survived the testator and attained the age of twenty-one years. The youngest became of age on the twentieth day of December, one thousand eight hundred and thirty-five. In the month of May following, the executors sold, at public auction, all the real estate of the testator, except the house and lot devised by him to his widow during her life, for the gross amount of one hundred and five thousand one hundred dollars, part of which had been paid in cash and

1839.

DRAKE
v.
PELL.

the residue was secured by the bonds and mortgages of the purchasers, agreeably to the terms of sale. The prices brought were satisfactory to all parties.

Five of the testator's children were still living, and were made parties defendants, with the husbands of two of the daughters, who were married. The other four were dead ; and all of them had died after attaining lawful age and before the said sale, and also before the youngest child attained his lawful age. The four deceased children were : 1. Hannah, who was the wife of James Lounsbury and who left two children, namely, Mary Eliza and John S., both of whom were infants. The husband administered upon her estate, and was appointed the general guardian of his two children ; he and they were made defendants. 2. Benjamin Joseph Pell, who died intestate, leaving a widow, Sarah Ann, and two infant children, namely, Charlotte and Josephine. William E. Craft administered upon his estate, and he and the widow and two children were made parties defendants. 3. John Pell, junior, who left a widow, Elizabeth Pell, having made a will, and thereby devised and bequeathed all his estate to his widow ; and appointed his mother, Mary Pell, his sole executrix. These two last named were also defendants. 4. George Warner Pell, who died intestate, without issue, and was never married ; his brother, Richard Moore Pell, administered upon his effects and was made a party defendant in that capacity.

Four of the defendants were infants, who had put in a general answer ; and as to them, the material facts stated in the bill had been proved before a master, and his report, to that effect, obtained. The adult defendants had all appeared and, by their answers, admitted all the matters stated in the bill. As to them, the cause was heard on bill and answer ; and, as to the infant defendants, on bill, answer and master's report.

*Mr. George W. Strong*, for the complainants.

The testator, by his will, expressly provided for four events which might happen in regard to his children : 1. The death of one or more of them before him, leaving no issue. 2. The death of one or more of them after him, under age, leaving no issue. 3. The death of one or more of them after him, under

1839.

DRAKE
v.
PELL.

age, and leaving issue ; and 4. The death of one or more of them after him and after having attained full age.

Neither of the three contingencies first specified happened. The fourth did ; and, in that case, the will provided that the share, portion, or interest of the child so dying should go to the heirs, devisees or legal representatives of the child so dying. In either of the two events first contemplated, the share of the one so dying is given to the surviving children, and the issue of such as may be deceased. In the third event, the share is given to the issue of the deceased.

The questions which, in reference to the events that have happened since the death of the testator, the executors deem it their duty to submit to the decision of the court and to obtain its direction and protection in the distribution of the proceeds of the sales of the real estate, are :

1. Was the right to the shares of the four deceased children vested in them absolutely on their attaining lawful age or not ; and if so, was the same divested by their deaths before the youngest child attained that age or how otherwise ?

2. Are those shares to be deemed real or personal estate, in reference to the sale which has taken place ?

3. What is the correct construction to be given to the clause in the will, which directs that, in case any of the children should die after the testator and after having attained the age of twenty-one years, the share, portion or interest of the child so dying should go to the heirs, devisees or legal representatives of the child so dying, in the event of the court so deciding that the shares were not vested at the times of the respective deaths of the four deceased children ?

4. Is the surviving husband of Hannah, one of the deceased daughters, entitled to his estate by the curtesy in her share, in case it should be adjudged to be real estate or to the proceeds thereof in case it should be adjudged to be personal estate, he having waived all right thereto, in either event, by his answer, in favor of his said two children ?

5. Is the widow of Benjamin Joseph Pell, one of the deceased sons, entitled to her dower in his share ?

6. Ought the executors to sell, during the life time of the testator's widow, the remainder of the real estate devised to her for life, all the adult defendants alleging, in their answer,

Vol. III.—33

1839.

DRAKE
v.
PELL.

that it would be for the common interest of all, to postpone the sale till after her death?

7. As John Pell, junior, devised and bequeathed all his estate, both real and personal, to his widow, will she or not take his share, whether it be held to be real or personal estate?

The complainants, seeking only the advice and direction of the court for their indemnity in their future conduct, it is unnecessary, and, perhaps, would be improper for them or their counsel to present to the court any reason for its decision; leaving that duty to be performed by the counsel for the adverse claimants. It is, however, thought proper to call the attention of the court to various adjudged cases, which appear to have a bearing upon the questions submitted:

1. Whether the shares were vested or not: *Stanley* v. *Stanley*, 16 Ves. 491; *Phipps* v. *Williams*, 5 Sim. 144, and cases there cited; *Adams* v. *Beekman*, 1 Paige, 632; *Harrison* v. *Freeman*, 5 Ves. 207; *May* v. *Wood*, 3 Bro. Ch. Rep. 471; *Booth* v. *Booth*, 4 Ves. 399; *Green* v. *Pigot*, 1 Bro. Ch. Rep. 104; *Harrison* v. *Graham*, 6 Ves. 239; *Patterson* v. *Ellis*, 11 Wend. 259; *Newbold* v. *Roadknight*, 1 Russell & Mylne, 677; 15 Ves. 121; *Jones* v. *Mackilwain*, 1 Russell, 220.

2. Whether the shares be real or personal property: *Law* v. *Bennett*, 1 Cox's Ca. 167; *Ripley* v. *Waterworth*, 7 Ves. 425; *Bronson* v. *Biggs*, 7 Ves. 279.

3. As to the meaning of the term legal representatives: *Price* v. *Strange*, 6 Madd. 104; *Evans* v. *Charles*, 1 Anstr. 128; *Saberton* v. *Skeels*, 1 Tamlyn, 383; *Baines* v. *Ottey*, 1 Mylne & Keene, 465; *Palin* v. *Hill*, 1 Mylne & Keene, 470: *Bulmer* v. *Say*, 4 Simons, 48; *Ripley* v. *Waterworth*, 7 Ves. 425; *Bridge* v. *Abbott*, 3 Bro. Ch. Cas. 224.

4 and 5. As to the right of dower: *Hawley* v. *James*, 5 Paige, 318, 452, 453.

6. As to the rights of the widow of John Pell, junior. *Smith* v. *Claxton*, 4 Madd. 260.

The complainants also submit that they are entitled to be paid their costs and expenses out of the fund.

*Mr. Peter A. Jay*, for the defendants.

Upon the will, and upon the foregoing state of facts, several

1839.

DRAKE
v.
PELL.

questions have arisen which have induced the executors to apply to the court for instructions.

Are they bound to sell immediately the reversion of the house devised to the widow for her life ?

They think, and so do the surviving children, that this would be inexpedient ; that if the house were now set up at auction, subject to the estate of the widow, and liable to waste, accidents by fire, &c., during the whole continuance of that estate, it would bring a price by no means equivalent to its value. Yet, as there are infants concerned, they fear that a postponement of the sale would be unauthorized, unless sanctioned by the court. Whatever the court directs on the subject, they will do.

Did the property vest absolutely in the children, upon their attaining the age of twenty-one years ? We think it did, and on attaining that age, each child might dispose of it by deed or will. The first direction in the will is, that as soon as the youngest child should be of age, the executors should divide the land, or its proceeds, among the nine children. Had nothing been added, this would have given a vested interest to those nine children immediately.

But if any die under age, his share is devised over to his issue, if he leave any, and to the survivors if he does not. Hence, the share is either contingent or defeasible, until the child arrives at age ; but at that period it is absolute, and we think this would be beyond doubt, if it were not for a further direction, which occasions the only difficulty in the case, viz . that if a child dies after arriving at age, his share shall go to his heirs, devisees or legal representatives.

It is to be remembered, that the legal estate was in the trustees, and could only be conveyed by them. They held it in trust for the widow, till a certain period. When that period arrived, they were to divide the property or its proceeds among the nine children. If any of them should then have died under age, they were to pay or convey his share to his children if he had left any ; if not, to his brothers and sisters. But what if he had died of full age ? Then, whether he had or had not left children, they were to pay or convey his share to his heirs, devisees or legal representatives. But this last discretion the testator did not mean to give to each child who came of age before the youngest : a life estate with remainder

1839.

DRAKE
v.
PELL.

over to his heirs or devisees or legal representatives, but merely to direct the trustees to pay or convey to those deriving title under him. The heirs, devisees, &c., were to take, not as purchasers, but as representatives of the deceased child. The land might or might not be sold by the executors. The property to be divided might be real or personal. If real, it was to go to the heirs or devisees; if personal, to the legal representatives: that is to say, to the executors or administrators. *Price* v. *Strange*, 6 Maddock's C. R. 159, American ed., p. 104. A testator devised real estate to trustees in trust to pay the rents to his widow for life, and after her death to sell and divide the proceeds among such of his children as should then be living, and the legal representatives of such as should then be dead. The Vice-Chancellor said "it is a sound rule of construction to understand words in their ordinary sense, unless controlled by a different intention appearing upon the whole instrument. The ordinary sense of legal representatives is executors or administrators; and reading the words in that sense in the first passage makes it equivalent to a direction to pay the produce of the estate, at the death of the widow to the children, their executors or administrators, or in other words, gives a vested interest to the children, and the question whether this ordinary sense is controlled by a different intention appearing upon the whole instrument." Now, in Mr. Pell's will, there is nothing to control this sense of the words, but, on the contrary, it is manifest that he intended to give to a child who had attained full age a vested and absolute interest.

If a child should die under age, he provides for the several contingencies of his leaving or not leaving issue. But if he dies of full age, whether he had or had not children, his share is to go to his representatives, either real or personal, as the share should happen to be real or personal estate. We therefore think that the words legal representatives are not a term of substitution, but of limitation, expressing the quantity of interest intended for the child.

The next question to be decided is, whether the money received for the land is to be considered as real or personal estate, and to be paid to the heirs or to the executors or administrators of the four deceased children?

1839.

DRAKE
*v.*
PELL.

We submit that it is personal estate, and to be paid to the executors or administrators. Land agreed or directed to be turned into money is, in equity, considered as money ; and if the legatee to whom the proceeds are to be paid dies before the sale, his executors, and not his heirs, will be entitled to them : *Bartholomew* v. *Meredith*, 1 Vernon, 276 ; *Doughty* v. *Bull*, 2 P. W. 320. Mr. Pell, the testator, directs his executors to sell the land, and to divide the proceeds among his nine children. Had he stopped here, no doubt could possibly be entertained that it was to be considered personal estate ; but he adds, " or else at the discretion of my executors to make partition."

What difference is caused by this discretionary power to make partition ?

We think none. The testator positively directs a sale, but empowers his executors to revoke this instruction, and to substitute a partition for a sale. Until this power is executed, and the direction to sell annulled, the latter remains in full force. This idea will be made more plain, by supposing the discretionary power vested in a third person, as if the direction had been to sell, or if his wife, in her discretion, should admit them to make partition ; then, if no orders had been given by the wife, the direction to sell would have remained in force, and there could then have been no doubt that the property would be deemed, in equity, personal estate. But, suppose the direction had been, that the executors should either make partition or sell, as they might think best; the result would still be the same. When the execution of a power to sell is made, on the election of the donee of the power or on any contingent want, then, if the power is never executed, the property is not deemed converted. But so far as the power is executed, the conversion relates back to the date of the power. For every act done under a power relates to the date of the power, and has the same effect as if done by the donor of the power. This, as a general rule, cannot be controverted ; and the present case, if not an exception, will appear by the authorities. Most of the decisions reported on the subject of conversions of one kind of estate while the others are in cases in which the directions to sell or purchase are positive, those where the power to sell is discretionary, or depends upon the election of

some other than the creator of the power are not numerous, but they are all consistent, and unanimously maintain the doctrine we are endeavoring to establish.

*Lowes* v. *Bennet*, 1 Cox's Ch. Cases, 167. A testator, in his lifetime, made a lease, and agreed with the lessee, that if the latter, before a certain day, should desire to purchase the fee of the premises for £3000, the testator would, on receiving that sum, convey it. The testator afterwards made his will, and devised all his real estate to Bennet, and all his personal estate to Bennet and Mary Lowes. After the testator's death, the lessee paid the £3000 to Bennet, and received a conveyance for the premises leased. It was held that this money was to be considered part of the personal estate of the testator, and that Mary Lowes was entitled to half of it. The Master of the rolls said, " the only possible difficulty in this case is, that it is left to the election of Douglass (the lessee) whether it shall be real or personal. It seems to me to make no distinction at all. When the party who has the power of making the election has elected, the whole is to be referred back to the original agreement, and the only difference is, that the real estate is converted into personal at future period." The case of *Ripley* v. *Waterworth*, 7 Vesey, 425, was decided on the same principle, and Lord Eldon cited the above case of *Lowes* v. *Bennet*, with approbation.

Both these cases are where the property was converted by agreements leaving an option to the purchaser. The others which we cite were on wills. *Brown* v. *Brigg*, 7 Vesey, 279. A testator ordered and empowered his wife, in case she chose so to do, with the advice of W. R., to sell his Gransden estate, which was not devised, and to invest the proceeds, the income of which he gave her, during her life, together with the income of his residuary personal estate, and after her death he gave the whole of his residuary personal estate to certain legatees. The wife sold only a part of the land, and died. The heir of the testator claimed the unsold land, and also the proceeds of that which had been sold. The legatees claimed the same proceeds, and prayed that the rest of the land should be sold for their benefit. It was decided that the heir was entitled to the unsold land, and that the proceeds of the part sold were personal estate and belonged to the legatees. Had there been

no option left to the wife the whole would have been person-
alty. But so far as the power was executed, the sale related
back to the date of the power and had the same effect as if it
had been made by the testator. *Walter* v. *Maunde*, 19 Ves.
428, and *Cole* v. *Wade*, 1 Ves. 27. A testator devised real
and personal estate to trustees, to be distributed, at their dis-
cretion, among his relations, and authorized them, if they
should think proper so to do, to mortgage, sell or convey the
real estate as in their discretion they should think fit. The
trustees sold part of the land, but died before they had made
distribution. It was held, that the trust to distribute at discre-
tion was personal, and failed at the death of the trustees; and
that the whole trust properly must go to those who were next
of kin to the testator at the time of his death. That so much
of the land as was unsold[1] should go to such next of kin as
real estate, and that the proceeds of sale should go to them as
personal estate. Lord Eldon said, " My opinion is, that what-
ever the trustees did towards and in the due execution of the
power, with a view to the due execution of the trust, which is
now disappointed, the court will also take to be property of
the same nature and quality as it is found; whatever, there-
fore, was converted into personal estate in the due execution of
the trust, must be taken as personal estate."

It was decreed that the costs should be apportioned accord-
ing to the nature of the real and personal estates, which shows
that the persons *in esse* at the time of the decree, who were
entitled to the property, claimed the personal and real estate
in different characters, some as real and others as personal
representatives of those who were next of kin to the testator
at the time of his death. Indeed, on any other supposition,
the above decision of Lord Eldon was uncalled for.

That the children now living take their shares of the pro-
ceeds of the sale as personal estate, and that it will go as
such to their representatives, we presume cannot be doubted.
It is equally clear, that if Benjamin Joseph Pell were now
alive, he would take his share as personal estate; and we con-
tend that his representatives must stand in his shoes, and take
as he would have done. In *Ackroyd* v. *Smithson*, 1 Browne's
Ch. C. 503, Sir John Scott (afterwards Lord Eldon) says, that
*Scudamore* v. *Scudamore*, determines that the representatives

1839.

DRAKE
*v.*
PELL.

of a person entitled under a will shall take money as money or as land, as the person whose representatives they are would have taken it.   The case of *Flanagan* v. *Flanagan*, cited in the same case, (1 Browne's Ch. C. 500), supports this rule. There were three persons, all named James Flanagan ; grandfather, father and son.   A testatrix devised all her estate, real and personal, to a trustee, in trust to sell so much of her real estate, as, together with the personal, should be sufficient to pay her debts and legacies, and to convey the residue and pay the surplus produce (if any) of the part sold to the two Flanagans, the grandfather and father, their heirs, executors and administrators equally.   A bill was filed by the creditors of the testatrix, to compel a sale, and a decree was made for a sale, and it was decreed that if more money should be raised by the sale than was necessary, the surplus should be paid to the two Flanagans, the grandfather and father.   After this decree, Flanagan the father died,' and then part of the land was sold ; and after the sale Flanagan the grandfather died.   After the death of both, a further part of the land was sold, and it was found that the second sale had been unnecessary, the proceeds of the first being sufficient to pay the debts and legacies. Flanagan the father had left a son and daughter.   Flanagan the son was the heir at law to his father and grandfather, and claimed the whole proceeds of the second sale.   He and his sister were the next of kin to his grandfather, and she claimed part of the proceeds of the second sale.   And it was decided in her favor, that they should go to the personal representatives of the grandfather.

Where real estate is directed to be sold for a special purpose, as for payment of debts, if more be sold than necessary, the surplus goes as the land would have done, to the heir or devisee of the testator ; but as such heir or devisee would necessarily receive the surplus in money, that money is part of his personal estate ; and if he dies before he receives it, or even before the sale, it is to be paid to his executor and not to his heir.   Thus, in the case last cited, the surplus undoubtedly belonged to Flanagan the grandfather, the devisee ; but as he, if living, could only have received it in money, it was directed to be paid as part of his personal estate.

It may be objected that when Benjamin Joseph Pell died,

1839.

DRAKE
v.
PELL.

his heir had a vested interest in the land, of which the sale could not deprive him. But in *Brown* v. *Brigg*, the heir of the testator had certainly a vested interest in the Gransden estate, of which the sale totally deprived him. The interest which vested in such case, was subject to the power of sale and to all the consequences of it. With respect to Benjamin Joseph Pell himself, it would be more accurate to say that he took a vested right to receive, when the youngest should come of age, the proceeds of the land, if sold, or the land itself, in case the executor should think it indiscreet to make partition. It may also be objected, that the administrator of Benjamin Joseph cannot be entitled to the proceeds, because they never formed part of the personal estate of his intestate. But this is not a necessary consequence. In *Flanagan* v. *Flanagan*, the executor was entitled to money which formed no part of the estate of his testator. If A. should covenant, that on a certain day he would either pay $10,000 to B., or convey to him certain land in fee ; and if, before that day, B. should die intestate, now, if A. should elect to convey the land, the conveyance would be to the heir. But if he should elect to pay the money, the administrator of A. would be entitled to receive it. And it may also be objected, that Mr. Pell did not mean to empower his executors to give the property, at their own option, to the heir or to the next of kin of any one of his children who might die before the youngest child came of age.

Mr. Pell has certainly given a valid power of sale to his executors ; and the legal consequences resulting from the execution of that power cannot be affected by his ignorance or presumed intention. It is very probable, that the question we are now discussing never occured to him. But if he had been consulted on the subject, there is no reason to suppose that he would have preferred the heirs of a deceased child to his next of kin. There is another rule on the subject of conversion, which may be mentioned merely to show that it has no application to the present case. If a person, entitled to the proceeds of a sale, elects to take the land instead of the proceeds, he may do so, and then the land becomes his real estate. Supposing that Benjamin Joseph had a right to elect during the minority of his youngest brother ; and if he had so elected,

his interest would have been real estate. But he never did make such election, and therefore the rule does not apply.

We submit, therefore, that the proceeds of the sale are to be paid as follows : one ninth part thereof to each of the three unmarried children of the testator now living, viz : William J. Pell, Richard Moore Pell and Caroline Pell. One ninth to Reuben Rowley, in the right of Eliza Ann, his wife. One ninth to William E. Craft, in the right of Amelia Grace, his wife. One ninth to Mary Pell, executrix of John Pell, (called in the will John Pell, junior), he having devised all his estate real and personal to his widow, Elizabeth Pell. She will, under the very words of the will of John Pell, senior, be entitled to receive a share of the money ; but it ought to pass through the hands of the executrix, because, if it be, as we suppose, part of his personal estate, it will be liable for his debts. One ninth being the share of Hannah Maria, who was the wife of James Lounsbury, should be paid to her husband, who is also her administrator ; but he, by his answer, consents, and prays that it may be paid to her two children, Mary Elizabeth Lounsbury and John L. Lounsbury. They being infants, a guardian must be appointed for them. One ninth, being the share of Benjamin Joseph Pell, to be paid to William E. Craft, his administrator. And a ninth, being the share of George Warner Pell, to Richard Moore Pell, his administrator.

The observations already made are all that are necessary in relation to all the shares, except that of Benjamin Joseph Pell, concerning which there is still one question to be determined, namely, whether his widow is entitled to any part of it for dower. We think that she is not. Benjamin Joseph Pell never had any legal estate in the land. Before the revised statutes went into operation, a widow could claim no dower in equitable estate. But Benjamin Joseph Pell died in 1833.

The revised statutes concerning dower, (1 R. S. 740,) make no alteration of the law on this point. But in the case of *Hawley* v. *James*, 5 Paige's Rep. 452, the chancellor has decided that certain other provisions in these statutes do, by implication, permit the widow to receive equitable dower in the descendible equitable interests of her husband in real estates which belonged to him at the time of his death. It would seem that such equitable dower is subject to the debts of the hus-

band and may be defeated by his conveyances. We think that if Benjamin Joseph Pell had a descendible interest in the land, the widow's dower in it might be defeated, in the same manner as dower at common law. Now, by the ancient law, dower is the continuation of the husband's estate, and is, therefore, defeated by whatever destroys that estate, as by the entry of dower for breach of condition. 1 Caine's Dig. Title, Dower; Preston on Abstracts of Title, 372.

In the present case, the husband's estate in fee, or descendible interest, if it ever existed, has been destroyed by the execution of a power to which it was at the moment of its creation, and a purely personal estate substituted in its stead.

THE VICE-CHANCELLOR :—I have carefully considered this case ; and examined most of the authorities which have a bearing upon it.

Upon the first question submitted, whether the nine children of the testator (all of whom survived him) took vested interests in the residue of the real estate devised or in the produce of it, and if so, from what time ? I am of opinion, that, according to the true construction and intent of the will, the rights and interests of the children did not vest and become absolute until the youngest child attained the age of twenty-one years. This is the time fixed for the sale or partition of the real estate, and their interests were contingent until that period arrived. The devise to the executors carried the fee to them in trust, and the only beneficial interest which vested in the first instance and took effect at the death of the testator, is the interest in the rents and profits, under the trust for the purpose of maintenance ; and, until the time for a sale or partition, no further equitable interest or ownership in the children became absolute. The principal or capital of the residue of the real estate devised to the executors in trust, that is to say, the beneficial interest or ownership in it, was not given away, but remained undisposed of until the youngest came of age. Even when that period arrived, the will contains no express gift in terms to the children, though the direction to the executors to sell and divide the proceeds equally between the nine children, or to make partition and convey to them, imports and carries with it a gift. The time appointed for doing this, however, is

*(margin note)* 1839 — DRAKE v. PELL.

here of the substance of the gift, and not for carrying a gift previously made or expressed into effect. It is not the case of an immediate gift, which takes effect from the death of the testator, and where time allowed for realizing the benefit of it operates merely as a postponement of payment or of the enjoyment of the property given. It is argued against this conclusion and in favor of a vested interest in the nine children from the death of the testator, that it is a gift to them in remainder after a particular estate carved out, viz : during the minority of the youngest child ; and that, in such cases, the interests of the first and subsequent takers vest together. But there are exceptions to this general rule, where, from the plan and context of the will, it is clearly shown that the testator did not intend any interest in the principal or capital to pass (where he has disposed of the interest or dividends only for a particular purpose) during the continuance of the particular estate. And this will be the case, says Roper, where "there is no disposition of the capital distinct from the period appointed for the payment or distribution of it, viz., upon the death of the tenant for life :" 1 Roper on Leg. 396, pl. 3. In addition to the case of *Billingsley* v. *Wills*, 3 Atk. 219 ; *Thickness* v. *Leige*, 3 Bro. P. C. 365, and others cited by Roper, as illustrating his remarks, and in support of that position, other cases may be referred to, containing the principle and bearing a strong analogy to the present. *Houghton* v. *Whitgreave*, 1 Jac. and W. 145, is of this class, as also are *Pope* v. *Whitcombe*, 3 Russ. 124, and *Howes* v. *Herring*, in the Exchequer, 1 McClel. and Younge, 295 ; and *Adams* v. *Beekman*, 1 Paige, 632, seems to me a decisive authority on this point.

With the principle of these cases in view, the will under consideration cannot, in my judgment, be read as conferring absolute vested interests on the children until the youngest of them or the youngest surviving child should attain the age of twenty-one, though, before that period, the elder children might severally arrive at that age. I think this follows from the clauses of the will containing the substitutional bequests, in case of the death of any of the children. The first, second and third of these provisions of the will are clearly substitutional bequests, and intended to prevent a failure or lapse, on the hap-

pening of either of the events there specified; nor can I perceive any sufficient reason for distinguishing the fourth and last of these from the preceding and giving to it a character and effect altogether different. The event spoken of, in this clause of the will, has happened to four of the testator's children, they having died after the testator and after having respectively attained the age of twenty-one years. The words of the will are, " And in case any of my children shall die after me, and after having attained the age of twenty-one years, then the share, portion or interest of the child so dying, shall go to the heirs, devisees or legal representatives of the child so dying." Dying after the testator, and after having attained the age of twenty-one years, must be uuderstood here as a contingent dying, an event which might or might not happen, and not that inevitable event of death which was sure to happen after the child had survived the father and passed the age of twenty-one. The gift intended, as I have already considered, was a gift to take effect when the youngest child came of age ; and the object of this clause of the will, as well as of the preceding clauses, was to provide against a contingency which might happen to defeat the gift as to some of the children : viz., a dying after the testator and after the child had arrived at the age of twenty-one, but before the youngest had attained that age ; or, in other words, before the period fixed for the distribution of the estate. This is clearly the object and meaning of this part of the will ; and if it be necessary, in order to effectuate the intention of the testator and to render the will consistent and harmonious in all its parts, the court will supply words or will construe those used in such a way as to render the whole sensible.

In the present case, there is no.difficulty in understanding the event spoken of or referred to as a death which might happen after the testator's, and after the child had arrived at the age of twenty-one, but before the period for distribution or the full age of the youngest surviving child. *Galland* v *Leonard*, 1 Swanst. 161, is directly in point on this subject.

Next, in regard to the words, " then the share, portion or interest of the child so dying shall go to the heirs, devisees or legal representatives of the child so dying." In the events which have happened in relation to the four children, who have

1839.

DRAKE
v.
PELL.

died since their father, after they had become twenty-one years of age and before their youngest brother had attained that age; I consider these words of the will as substituting other persons to take in their steads, and "heirs," "devisees," and "legal representatives," in the sense and meaning of this will as words of purchase and not of limitation. These words designate classes of persons to take, not derivatively from or under any child or children of the testator so dying or in their right, except as to the amount of the share or portion of the *estate devised*, but in their own right as devisees, under a new and distinct gift, in the place of the gift intended for the first taker which has failed by his or her death; and those persons who answer to the description of heirs, devisees or legal representatives of a deceased child of the testator, having regard to the nature and character of the property, are the persons now entitled to take under the will, as the substitutes. If the property passes or is transmitted as real estate, those who would be the heirs at law of the deceased child, are the persons meant and entitled to a one-ninth share of the lands so devised. If the child so dying has made a will, after he or she so dying had become twenty-one, the devisees named in that will would take the share, provided it is embraced in the latter will. For I am of opinion, that by designating devisees of a deceased child, as persons to take, a power of appointment by will was given to such child after he or she had become twenty-one, as before mentioned, and to say to whom the share intended for such child should go; and that the person or persons answering to the description of such devisees are entitled, by virtue of such appointment, whether the property be real or personal estate.

And with respect to the words "legal representatives," if the property transmitted be personal estate, the persons designated by and answering to this description are those who, by the statute of distributions, are known as the next of kin, and not the executors or administrators of a deceased child : *Bridge* v. *Abbot*, 3 Bro. C. C. 224 ; *Barnes* v. *Ottley*, 1 Mylne and K. 465 ; *Palin* v. *Hills*, 1 Mylne and K. 470. The testator doubtless meant those who should take beneficially to themselves as owners, and not in a mere official or representative capacity in the right of the deceased child. Hence executors

or administrators are excluded ; and though the property may be personal, and they, in one sense, may answer to the description of legal representatives, they are not in this case the persons intended.

In the views thus far expressed, I believe I have sufficiently disposed of the first and third questions propounded by or on behalf of the complainants.

The second question submitted by the pleadings is, whether the shares devised to the children of the testator, and to those who, under the foregoing construction of the will, are entitled to take substitutionally, are to be deemed real or personal estate?

The executors having sold and converted the real estate into money, as they were authorized to do, and they being directed to divide the proceeds among the nine children, and as it is the produce arising from the sale which they now take, I am of opinion that they receive the same as personal estate. In *Smith* v. *Claxton*, 4 Mad. 492. Sir John Leach, M. R. laid it down as a rule, that where a devisor directs his land to be sold and the produce divided between A. and B., the obvious purpose of the testator is a sale, for the convenience of division, and A. and B. take their several interests as money and not as land. That such is the case here appears indeed to be conceded by the counsel on both sides in their argument.

The proceeds of the property, as far as sold, after reserving enough to raise the annuity given to the widow for life, the executors must divide into nine equal parts and pay over to each of the five surviving children of the testator their respective shares. The husbands of the two married daughters living are entitled, in the right of their wives, to receive their shares, but the payments had better be made upon the joint receipts of the husbands and wives. With respect to the share of the deceased daughter Hannah, (Mrs. Lounsbury), at her death, her two children became entitled, as the devisees in her place, upon the principles which I have stated ; and their father has no interest whatever, either as tenant by the curtesy or otherwise, in their mother's rights in this share. As the general guardian of his two children, the money may be paid into his hands, upon his receipt and acquittance, to the executors. So, with respect to Benjamin Joseph Pell's share, who died intestate, leaving a wife and two infant children. The

two children are to be deemed the devisees under the will, instead of their deceased father ; and their mother has no right of dower or other interest in this share, nor has the administrator of their father or his creditors any right to interfere with the money.   A guardian should  be appointed, if there be not one already, who will have to give the requisite security ; and can then receive it for the children.

The share of John Pell, junior, has probably passed, by virtue of the appointment of his will, to his widow, Elizabeth Pell, as the substituted devisee in his place.   I have not the will before me, but if it be found  to embrace the share which was intended for  him by his father's will, the executors will be safe in paying over that share directly to her.   The executrix of that will has nothing to do with the receipt of the money.

George Warren Pell's share, who died  intestate, without issue and was never married, goes to his next of kin, as a class of persons to take as  devisees  in  his  place ; and  these must be ascertained by reference to the statute of distributions.   His administrator has nothing to do with this share, in his capacity of administrator.

A decree may be entered, declaring the rights of parties, as herein explained ; and the costs of all  the parties  to the  suit must be paid out of  the proceeds of  sale in  the hands of  the executrix.